May it please the Court once more, good morning again. In this case, and again, Your Honors, my name is Andrew Wheaton. In this case, I represent a number of appellant defendant officers in yet another Section 1983 case arising out of civil unrest in the City of St. Louis on the weekend of September 15th through 17th in 2017. There's two separate orders at issue in this appeal. The first relates solely to Officer James Woods' motion to dismiss Plaintiff Michael Faulk's fifth amended complaint in this case. And the second relates to the District Court's denial of all of the appellant's motion for judgment on the pleadings only on count five of the fifth amended complaint, which is a putative 1983 conspiracy claim against all of the defendants. And the issue there is the applicability of the intercorporate conspiracy doctrine. I have to ask, although this is only one defendant of many, that was the moving party. And I am curious, having authored our Ahmaud case on the same series of incidents and being aware, at least generally, that those cases have now settled before Judge Perry, what's left of all the other officers, the claims against the other officers here? In this case, Your Honor? Yeah, in this case there are claims against a number of individual officers who actually arrested Mr. Faulk and allegedly used excessive force and assaulted him while physically seizing and arresting him. And there are supervisory liability claims against a number of the individual supervisor defendants that are appellants on the conspiracy claim. And will Judge Perry's separate decision in I don't know I'm prepared to answer that specific question except to say that that decision Well, I'm sure the Eastern District of Missouri is suffering from fatigue on these cases because I'm starting to. I share your pain, Your Honor. Of course, that was the point of my Ahmaud decision was let's get this over with. And now we have one of many defendants picking out one part of this case, which which is not the does not does not contribute to judicial efficiency. Well, I'll say that it absolutely could. And the reason why is that James Wood is among a number of defendants in these types of cases where his only alleged involvement was being there, present at the scene. And so this case could be dispositive of a number of claims against many officers in all of these many protest cases where the only allegation against them is that they were present. Well, that was your argument below, right? I mean, it was that he just that there wasn't enough to say that he he was involved in the seizure and the and the Fourth Amendment violation, even if one occurred. Correct. There was there was nothing. So now I the problem I'm having is what I don't see you raising below or having raised below is the seizure itself, the merits of the seizure and whether it was clearly established. So I absolutely positively see the involvement part of it. But can you help me out on where you raise the Fourth Amendment seizure part of it to the to the district court? Yes, Your Honor. We addressed it right up front in our reply brief. I was surprised to hear the plaintiff's assertion that we didn't raise the lack of a clearly established seizure because we did. It's at page one of our reply brief, which is a quote from Judge Woods, James Woods, motion to dismiss. And he and he said there is no, thus because there is no allegation that Wood participated in the cattling and because even if he had being on a police line does not constitute a seizure under the Fourth Amendment. Plaintiff fails to allege a constitutional violation by Wood, who did not seize plaintiff and who was not sued as a police supervisor. So to me, the issue was very specifically raised before the district. And you said that was in the motion to dismiss in the district court? Right. Which is the motion that's up on appeal. So I was very clearly raised as far as I'm concerned. And we said specifically he did not seize him under the Fourth Amendment. And we also raised qualified immunity. And we said being on a police line alone does not constitute a seizure. Those are the exact issues that are dispositive on appeal. And they were preserved for appellate review. Did you provide any further reasoning or was it just that statement that you that you read? Like, did you cite cases or anything like that? We did not go into a detailed analysis of manual versus, you know, all of the seizure cases that we've made. You know, and expounding upon the argument by, you know, citation to additional cases is standard practice as far as I know. I think the district court was obliged to consider the argument and wholly failed to really do any meaningful individualized particular qualified immunity analysis of Officer Wood's conduct. Yeah, I just wonder, I mean, the involvement thing you raised, I just wonder whether it's fair to criticize the district court because when we went back, those were the only words said about, that we could find on the Fourth Amendment seizure. And so, you know, is that enough for meaningful argument? I don't know. We can debate that. But I just wanted to, I wanted to give you a chance to respond to that. Sure. And it's undoubtedly difficult in a case like this where you've got, you know, I think there's 16 officer defendants, many, many motions to dismiss. So issues that might typically be very thoroughly briefed in a case not involving so many defendants, there's just not the opportunity to really do so in a case like this. And I understand it's a burden for the district court and the parties to conduct an individualized qualified immunity analysis. But just as much as it's a burden on the parties, the district court is obliged to conduct a particularized analysis of every individual defendant's conduct. And that's important. You know, and Officer Wood here is being subjected to litigation, yeah, years' worth of it already, based on the fact that he was merely working during a mass arrest event on this evening. And that's it. I should say he also took, took a bicycle out of the street that belonged to the plaintiff after another officer threw it into the street. But that's not the subject of any Fourth Amendment claim here. Well, if, assuming it's properly raised, that particular issue, I'm going to ask you about the merits of it, which is, it seems to me like it is, I mean, I don't know if we have any peddling cases, but surrounding somebody in riot gear, and I, leaving aside the Woods not involved, but surrounding people in riot gear and the whole point of a kettle is to, is to basically provide no means of escape. How can that not be a seizure? How can you feel free to leave in a situation in which you're surrounded on all sides by cops with riot gear on? Well, it's not clearly established that the analysis is about being free to leave an area. The Supreme Court's jurisprudence on this question is at best unclear, even after its recent decision in Torres v. City of Madrid. And there's particular uncertainty with respect to the second type of a seizure, which is submission to a show of authority. And does that require absolute control over a suspect's movements? Does it require acquisition of possession of the person's body? It's not clear. But we have cases, and maybe I'm wrong about this, you can certainly argue with me, but I recall cases in which we have a car that's surrounded on all sides by police cars, so you've actually boxed somebody in, and we've said that's a seizure. I don't understand how a kettling would be any different than that. There's also a case, and I understand that, Your Honor, there's also a case cited in our brief where there's a traffic stop, similar situation, but the court found that there was no seizure because the momentary submission to authority was just a ruse before the car took off. So this is more akin to that kind of situation where none of these 100 people have actually been controlled or seized by any officer when they're merely encircled. And the Eleventh Circuit's decision is the most analogous case I can find on the kind of compulsion by encirclement that we're talking about here. And in that case, the Eleventh Circuit said, yes, you were encircled, you could not escape that circle, but there was no seizure. I'm confused here. Are we talking about qualified immunity? This is a motion to dismiss, right? Yes, Your Honor, and qualified immunity was raised. Are you saying that kettling is not a seizure as a matter of law for a Rule 12 motion, or are you saying that the lack of clarity on that issue warrants qualified immunity at the Rule 12b6 stage? Both, Your Honor. I don't think this was even an issue on this appeal, except insofar as we get to the intra-enterprise conspiracy point. As far as Officer Woods is concerned, this is a primary issue on appeal. And to answer your question directly — That kettling is not — Not a clearly established seizure for qualified immunity purposes. As a matter of law at the Rule 12 stage. Well, yes, Your Honor, and we take the facts, the well-pleaded facts as true, as alleged by the plaintiffs, and giving them every inference. Number one, there was no specific allegation that Officer Woods was even on a police line. But number two, assuming he was, all he did was walk towards a group of people on a police line. And how could he know — But that's his involvement. I thought, now, I can't understand from the briefs and particularly from the argument, where we're — we've stopped talking about Woods individually and started talking about the squad. Well, Your Honor, Woods' involvement, you know, we'll — Doesn't matter if the squad has arguably committed a seizure, such that the whole squad couldn't get a Rule 12b-6 dismissal on qualified immunity or otherwise. If Woods' non-involvement entitles him to dismissal. So why are we — why are we even talking about whether, you know, why — Judge Strass says it sure looks like a seizure. But the point is that the plaintiff has failed to point to any controlling authority establishing that it is one. And so it's not clearly established. And the question is — So you're saying all of the defendants were entitled to qualified immunity? Not — just the ones who were there on a line, not the ones that actually physically arrested Wood and there was an arrest team there. Why didn't you bring the motion for all of them? Then we'd have that issue. Well, Your Honor, just the way that the procedural cards fell, this seemed to be an opportunity to address an issue that applies to many of the defendants in many of these cases in a direct way. So I expect that the other defendants will, on summary judgment, raise the arguments that you're addressing, but they're not at issue here. Let me ask you about the involvement. I want to get back, because I, too, want to get to that eventually. So the complaint — and you can correct me if I'm wrong, I have a note here — alleges that Wood agreed to, and this is a quote, participate in the kettling plan, end quote. It also alleges that he was working while it happened. And then it further says — and this is probably the best evidence, or not evidence, best allegation for the other side — and he seized Falk's bicycle, which implies that he was present. Is that not enough to say he was part of the line? I mean, it may turn out that he wasn't, but the allegations seem to suggest that he was there on the line. Oh, yes. And we'll effectively concede that, Your Honor, that he was there on a line. And even if he was, as far as he knew, he hadn't personally seized anybody under clearly established law. If you put yourself in Officer Wood's shoes, he's just walking towards a group of people on a police line. Would he know that he has, for Fourth Amendment purposes, seized someone by acquisition of feel free to move about inside the circle. They still could pose a threat to officers. They're not under control yet. He just wouldn't have known that he'd seized them for Fourth Amendment purposes under clearly established law. So to get back to Judge Loken's point, I think that this may collapse into what you're saying, which is that it's not a seizure at all. Because if he was involved, if he was on the line, it doesn't matter what he personally thinks. He was there, and he was part of that line that did the kettling. And then it may collapse into — in your view, maybe I'm misreading this — it's a collapse into whether it's a Fourth Amendment seizure. No, that's right, Your Honor. And I think the qualified immunity allows both arguments. Number one, there was no constitutional violation because there was no seizure. Number two, even if there was, it wasn't clearly established. So I think we're entitled to make both arguments if we're doing so on appeal. I've got a lot of other points to address. So I'll try to — Counsel, you're losing me a little bit here because I thought one of the claims on appeal was that the complaint in and of itself was inadequate with respect to its allegations against Woods as to the alleged constitutional violation itself. And that's true, Your Honor. But without getting to whether that is clearly established, I thought the claim was that since Woods has only mentioned two or three places in a very general way, that that's not enough to allege his personal individual accountability or participation or responsibility. Is that not where you're — the claim here? Did I miss the boat? No, you did not miss the boat. You're absolutely right. That is an argument being made on appeal. And it ties into the qualified immunity analysis on the first prong, where there's not sufficient facts to allege he even committed a constitutional violation. But I thought you just said you conceded — you conceded that he was in the line and participated in the formation that moved closer and closer and restricted the exit of the individuals that they were confining. I'm sorry, Your Honor. I meant to say, we conceded the alternative. So we make an alternative argument, wherein we — where we make that concession. The first argument that you noted is absolutely correct, that there's insufficient evidence to say he was even on the line. But if there was, he's entitled to qualified immunity. But now you're losing me, because I read a bunch of stuff from the complaint. You conceded all of those things happened, right? I mean, that those would have been sufficient to say he was at least on the line. Yes, but we make that concession only in the alternative on our second argument, that even if he was on the line, and even if the court finds it was sufficient allegations to say he was on the line. Well, let me ask you this. Do you think — I'm going to ask you the original question again, and sorry, I'm going over Judge Logan if I could — do you — as an officer of the court, do you think that's sufficient? Took the bicycle, participated in the kettling plan, and was working while it happened? Oh, he was there. There's no doubt about the fact he was there. Yeah. Got it. Does that answer your question? It does. It does. Okay. Sorry, I didn't mean to suggest otherwise. The only distinction was, was he on a police line, or was he just on the periphery in the area? Okay. You know, but he was at the scene, if that makes sense. Okay. I just want to say on that point that it ties into the intra-corporate conspiracy argument, and that what they're attempting to do here is to get around established Section 1983 jurisprudence. I don't want to get into that, but you misread the 1985 cases. They're all talking about official capacity conspiracies. This is an individual capacity conspiracy, and as far as I'm — you know, you just missed the boat on that. And I understand why, because it's a — it's a — it's a boat you'd — it's a boat you'd just as soon ignore. Well, I equate the official capacity language to acting under color of law in the 1983 context, and I understand official capacity has — Those were the claims in those cases. They were official capacity claims. So those courts in the — what's the Supreme Court case we're talking about? They don't address — they don't address 1983, but they certainly don't address — they And I may — I may be wrong on this point, but at least that's not how I read Ziegler, and I'll say that — That's the facts, emphasized in the opinion. And I certainly — You know, we are dealing with official capacity claims of conspiracy to adopt an evil policy, and that's not what we have here. And I'll — I'll just say that I didn't read it that way. Maybe I'm wrong, but I will note that this court has applied the intracorporate conspiracy doctrine in 85 claims, which is a sister statute. And though I've looked at those, and those were also — they were not individual — they were not members of an agency conspiring, not on behalf of the agency, but for their own purposes, to violate 1983. Well, in this case, Your Honor, if you're acting under color of law, then you're acting in furtherance of the interests of the city. And I know we're out of time, but — Well, you know, this — it's one thing to say, you know, this should be applied to 1983, but then you've got to — then you've got to get down to the devils in the details. Well, I'll just — on that note, I'll say the common law always recognized a corporation as a single entity that acts through its agents. And that's at the heart of the — of the reasoning for the application of the doctrine. And I have to just mention — There are two corporate officers who can conspire to do — to do bad things for their own behalf rather than the corporation's. And then IIC doesn't apply. I would submit that then the officers are not acting under authority and under color of law such that a 1983 claim doesn't lie. Well — So — Yeah, yeah. You can argue that. But not today. Sure. I just have to briefly mention that, at the very least, even assuming everything that she says is true, Your Honor, Ziegler compels the conclusion — You don't get it. You don't get it under color of law. Okay. I just — Everything they did was under color of law. All right. Certainly, Your Honor. And I know I'm out of time, so I'll just mention that, regardless of all of that, Ziegler compels the conclusion, necessarily, that the intercorporate — that the application of the intercorporate conspiracy doctrine was not clearly established in the 1983 context. All right. That — That's thoroughly briefed. Yes, yes. And it, in my view, would get you nowhere, but my colleagues may disagree. Well, I hope that they do, Your Honor. And with that, unless there are any other questions, I'm happy to address them. I know we didn't get to the First Amendment claim. We'll submit that on the briefs. And I'll just note, he didn't know he was a reporter. There's no causal connection, because he didn't know there was even a reporter there between the retaliatory animus and the alleged action by Officer Wood. Thank you. Thank you, Your Honor. Ms. Anlin. Good morning, and may it please the Court. I wanted to begin, Judge Strauss, by addressing your question about the arguments raised below to the district court. So I'm looking at page 6 of Appellant Wood's motion to dismiss, and I will submit that the sentence read by the appellant, that there is no allegation Wood participated in the kettle, and because even if he had, being on a police line does not constitute a seizure, I will submit that both myself and the district court read his motion to dismiss as being primarily about personal involvement. And even if that sentence does preserve a claim that the kettling or the encirclement and entrapment with no means of egress was not a seizure, I don't believe it preserves the claim he now raises on appeal, which is that it's not a clearly established seizure. And he just simply didn't present this line of argument to the district court and give the district court the benefit of responding to the idea that there is not a clearly established precedent that, you know, encircling individuals, not allowing them a means of egress,  I would also submit to your honors that the argument as far as the seizure fails in the merit because there is bright-line Supreme Court rulings about what constitutes a seizure. And here, you know, I'm going to quote from Broward v. City of Inouye, that we think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place to achieve that result. Here, the allegations from Mr. Falk, which is what the district court properly took as true, is that Mr. Falk was surrounded by officers on all four sides, sought a means of egress, so asked to disperse, was not allowed to, and then Mr. Falk... Yeah, we understand all that. Thank you, your honor. I mean, I don't want to interrupt you. No, I was going to move on. Yeah, on the involvement point, that's what I want to talk to you about. You have the three allegations, and you heard opposing counsel say, well, he was there. There's no question he was there, but maybe he was off to the side. Maybe he was, you know, on a street corner. Maybe he was, you know, sitting in the park. Who knows? But why is that? Why are your allegations sufficient to show that he was actually part of the group that encircled him? So we believe that the allegations specifically in paragraph 255 and 256, which state that in 256 that he agreed to participate in the illegal kettle and then in concert kettled and unlawfully seized Mr. Falk, are sufficient here. We would also submit to your honor that in evaluating a complaint, the district court properly uses, you know, judicial experience, common sense, and grants inferences in favor of the plaintiff. And here, you know, Judge Hamilton, I think, looked at these specific allegations saying he was obviously there, you know, specific allegations that he in consort kettled, and read that, granting inferences in favor of Mr. Falk, to include an allegation that he was on the line. Is there any significance to the bike? Because I'm sure that opposing counsel would view that as, well, maybe he took the bike and went off, you know, with the bike and didn't participate in the kettling. I just want to give you a chance to respond. So it's a good question. I think the significance of the bike shows that because he was close enough to go and grab a bike, it shows that he, you know, it sort of further inferenced that he was one of the officers. But there was no Fourth Amendment allegation regarding the bike. No, your honor. I studied the complaint from that standpoint. Correct, your honor. That was not alleged to be an unlawful seizure. Correct, your honor. So, and I will submit that the allegations regarding the bike are not up on appeal. Right. So, Judge Strauss, I think it's a fact from which the district court could grant an inference. But, you know, in and of itself, I don't think the fact that he grabbed the bike shows he was on the line. You know, Judge Loken, I wanted to respond to your point about the fact that we are up here on interlocutory appeal on a motion to dismiss. You know, frankly and candidly, your honor, if through discovery it was revealed that he was not one of the officers on the line, so if in his deposition he says, actually I was in a van and then I came later and I was grabbing the bike, you know, he would be dismissed from those counts because the basis for him being in those counts is that he was part of the lines that seized Mr. Falk. And so I think that is an issue that could be resolved with a full record in this case. And this case is, you know, partly through discovery right now. We don't like full records. The Supreme Court tells us not to push for full records on the qualified immunity issue. And what I notice is Judge Perry's decision in Street was one month after this decision. If we agree with the line Judge Perry drew in Street, what does that mean for this appeal? The line Judge Perry drew in Street regarding the officer's personal involvement. Your honor, I think the one distinction between the allegations here against Officer Wood and the officers named in Street is that Judge Perry noted that the only allegation against those 300 officers in Street was that they were working during the events. And here, we believe the other allegations, that he agreed to participate in the kettle, that he formed, you know, that he, that it could be reasonably understood that he formed one of the lines, could distinguish us there. But I would agree with your honor that if this court were to find that Officer Wood specifically did not have personal involvement, then the rest of the qualified immunity questions really don't. No, wasn't alleged to have sufficient involvement. Wasn't alleged to have sufficient involvement. On your street. Correct. Yeah, so I think, I think we're different than Street because there's... I mean, that slices away a small part of the case. Sure, and your honor, officers... And then the rest, it's for Judge Hamilton to carry on. Sure, and you know, as your honor mentioned earlier, and as my opposing counsel responded to, you know, the other defendants in this case are the officers who later assaulted and surrounded... Some of them. Correct. I had what, a half a dozen maybe. Correct. So the personal involvement questions Officer Wood raises in Mr. Falk's case are unique to Mr. Falk, or to Officer Wood, I'm sorry. Whereas the other defendants in the case, there's different bases for their personal involvement here. So... But qualified immunity, but 1983, damage liability is personal. Correct. And we care about that a great deal. Correct, your honor, and I think that... So defendant by defendant. You've got 255 paragraphs of allegations before you get to something that you even argue shows that Wood personally did harm to Falk. Correct, your honor. So I think that... That's absolutely right, your honor. So here... Maybe that's what it is. So here, you know, I think we would submit that Judge Hamilton, you know, again, looked at the complaint, granted inferences in favor of Mr. Falk, and accepted the allegations as true, and Judge Hamilton was satisfied with the allegations there as to him. However, again, we would also strongly dispute Appellant Wood's arguments in the alternative. I was a bit surprised to hear the way he phrased it today in the alternative. But that even accepting the fact that Appellant Wood was part of the lines, that the kettling itself was not a seizure. So we would strongly dispute that piece of it. And we believe that Supreme Court precedent is clear on that front. Your honor, I wanted to briefly touch on the intercorporate conspiracy doctrine arguments that Appellant Wood raises. So, you know, we would submit that the intercorporate conspiracy doctrine should not be applicable to 1983 claims, and that even if it were some sort of, to be viewed as a novel affirmative defense to be applied to 1983 claims, that does not negate clearly established law in this circuit that finds officers liable for conspiracy claims. When... Do those cases actually deal with it? I mean, they may emphasize the facts, but the one problem I'm having is one circuit had already said it does not apply in section 1983. And I realize there's another circuit that said it afterwards. But I'm just wondering whether an officer looking at all of this, and again, it's a fiction, would reach the conclusion, yeah, I definitely can't do this, given the other circuit's precedent. So, I think for an officer in the Eighth Circuit, particularly an officer, you know, one of the most applicable controlling precedents here is S.L. Exwell-Lenderman v. St. Louis Metropolitan Police Department. So there's applicable precedent from, in fact, this police department saying, you know, you cannot unlawfully conspire to, you know, assault or unlawfully arrest individuals. And I include a quote in my brief from Groh v. Ramirez, which is the Supreme Court talking about the fulcrum of the clearly established prong is, you know, would a reasonable officer have been put on notice by these cases? And, you know, for an officer in the Eighth Circuit, if there are these controlling Eighth Circuit cases, under the allegations put forth by Mr. Falk, those reasonable officers would have known. But is there a case that says that the inter-corporate conspiracy doctrine does not apply in the Eighth Circuit? You mentioned cases where we've held them liable for conspiracy, but is there one that actually holds that it doesn't apply? No, Your Honor, the circuit has not addressed it yet. And is that a problem from a clearly established law standpoint? So, the issue here, Your Honor, that I'm having is that if it is clearly established law, appellant cites no case that essentially turns clearly established law into unclearly established law. So if this circuit has held this is clearly established, thou shalt not conspire to unlawfully arrest and assault individuals. Appellant Wood doesn't cite a case that then says, well, it was clearly established and we're turning it into something that is not clearly established because other circuits are doing different things with a sort of novel affirmative defense. Agreed, if, and I think we're going around in circles, but agreed if we had a clear statement. If we said, oh, and by the way, we don't care about this, because it doesn't apply in Section 1983. Then I don't think you look to other circuits. But if all we have is sort of implicit statements, I just wonder if on its own that can be clearly established. But particularly when there's another circuit who has rejected the doctrine in Section 1983. Sure. Well, I think you're on our, you know, I think it, you know, I think we have a site to, I think it's Hernandez v. Mesa, which is a Supreme Court case, which is the idea that officers cannot, in considering what rights are clearly established, officers can't sort of rely on facts they learn later or rely on the idea that there may be new exceptions crafted or there may be new sort of defenses that come up. And so, you know, I think my best answer to your question is that if this circuit has been clear that, you know, conspiracy to assault and unlawfully arrest is not allowed, officers could not sort of wait and hope that there would be an adoption of another affirmative defense. And I wanted to echo Judge Logan's statements that inter-corporate conspiracy doctrine, as put forward in Ziegler and as this circuit in Kelly stated for 1985 claims, is really about official capacity claims. And, you know, Judge Logan, as you pointed out, the, you know, or as my opposing counsel stated, you know, the idea that actions of agents would be imputed to their employer, the idea that there would be sort of vicarious liability within a corporation that's fundamentally inapplicable to 1983 claims. So, you know, as you all are aware, our burden on plaintiffs is to show individual liability, and we can't impute the acts of these various agents to the employer. Can you imagine some 1983 Monell claims where this would be a very lively issue? Sure. For official policy, you know, for a 1983 claim, a Monell claim that's based on an official policy, Your Honor. But here, you know, we've asserted individual liability against these officers. And then the only claim against sort of their collecting agent, the city, is a Monell claim for failing to train and supervise, which is custom. And so we're really squarely out of the official capacity realm that the Supreme Court relies on in Ziegler, that the other circuits rely on in making this. And I wanted to just very briefly state, because I hear very certainly in his reply brief, that I would squarely contest Appellant Wood's statements that acting outside of the scope of your employment is akin to not acting under color of law. I think this circuit has been clear in Graham v. Salk, or in U.S. v. Colbert. The Seventh Circuit did a detailed analysis in Graham v. Salk Prairie that those are not the same concepts. So thank you, Your Honor. Can I ask one more question? Sure. The First Amendment claim, it seems like we're kind of shifting around on the claim a little bit,  and then now we've got it about interfering or deterring protesters from exercising their First Amendment rights. What do we do with that? Has there been a shift in theory here? No, Your Honor, there has not been a shift in theory. It's complicated. There's sort of two avenues here for Mr. Falk. So Mr. Falk was a working reporter. He was from the St. Louis Post-Dispatch. He's wearing a lanyard around his neck that says St. Louis Post-Dispatch. And so for officers that were aware that he was a reporter, that is one avenue for a protected activity. But the theory for the entire event is that all of those in this event were subjected to retaliatory actions because of the sort of protected speech of sort of imputed political viewpoint from the desire of the police department to retaliate against anti-police protests generally. So Mr. Falk is in a unique situation, Judge Strauss, because he's both a reporter who's there objectively attempting to cover the news, but then he gets quite literally caught in this kettle and sort of punished as others are in retaliation. Just one quick follow-up. He can't assert those other rights. He can't assert the rights of the protesters. He can only assert his own rights as a reporter, though, right? So I believe under this, under the Supreme Court case Heffernan, so imputed political basis is a basis for him to be able to assert those rights. Because if, you know, what the Supreme Court said in Heffernan is just because someone is wrong about your political beliefs, if they're retaliating against you, that's still retaliation under the meaning of the First Amendment. So I actually think I would submit otherwise, Your Honor. But thank you, Your Honors. It was a privilege to argue today. Thank you. Thank you, counsel. Time is used. And we understand the issues, and they've been thoroughly briefed and well argued. And we will take the case under advisement.